**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kevin UNTHANK, Defendant–Appellant.**

**No. 96–1265.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 4, 1996.

Decided March 19, 1997.

Rehearing and Suggestion for Rehearing
En Banc Denied May 27, 1997.

---

Suzanne M. Wissmann (argued), Office of United States Attorney, Criminal Division, Fairview Heights, IL, for plaintiff–appellee.

Donald V. Morano (argued), Chicago, IL, for defendant–appellant.

Before CUMMINGS, COFFEY and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

The defendant-appellant, Kevin Unthank, was indicted by a federal grand jury in the Southern District of Illinois, and was charged with conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and § 846. The indictment also alleged that Unthank had obtained cash proceeds of $240,820 from drug-trafficking and that these proceeds were subject to forfeiture pursuant to 21 U.S.C. § 853. Unthank entered a plea of guilty to the indictment and agreed to forfeit the illegal drug proceeds. The district judge accepted Unthank's plea of guilty, following a hearing to determine that the plea was knowingly and voluntarily made. At the sentencing hearing, the trial judge heard testimony from several witnesses, including Unthank and his father, and considered various defense objections to the Presentence Investigation Report ("PSR"). Two of the sentencing judge's determinations concerning the defendant's sentence are challenged on appeal. Over the defendant's objection, the judge sentenced Unthank as a career offender, pursuant to U.S.S.G. § 4B1.1, based in part upon the defendant's prior Illinois conviction for the crime of "intimidation," 720 ILCS 5/12–6, which the court determined was a "crime of violence,"

as a matter of federal sentencing law. The judge agreed with the Government's position that Unthank had directed his parents to secrete incriminating evidence after his arrest, while agents of the Drug Enforcement Agency ("DEA") were still investigating his marijuana dealing. The court reasoned that Unthank had obstructed justice and increased his base offense level by two points, pursuant to U.S.S.G. § 3C1.1. The obstruction-of-justice enhancement ultimately had no effect on Unthank's sentence as the defendant was assigned a *higher* offense level under the career offender provisions of the Guidelines, which prevail whenever they provide for an offense level "greater than the offense level otherwise applicable." U.S.S.G. § 4B1.1. The court sentenced Unthank to 262 months imprisonment, to be followed by five years supervised release, and ordered him to pay a fine of $3,500 as well as a special assessment of $50. Additionally, Unthank was ordered to forfeit the $240,820 worth of illegal drug proceeds. We affirm.

## I. BACKGROUND

Thirty-three year old Kevin Unthank is no stranger to the criminal justice system. Among the many adult criminal convictions listed in his PSR are two prior felony convictions that are relevant to the question of whether the district court's sentencing of him as a career offender was proper. In 1987, Unthank entered a plea of guilty to the federal crime of conspiracy to distribute cocaine and received a sentence of several years in prison. In 1991, Unthank was charged by the state of Illinois with committing the felony crime of intimidation, in violation of 720 ILCS 5/12–6, in Madison County, Illinois. Unthank pleaded guilty to the information in 1992, and thus admitted that he had "with the intent to cause Jackie Weber, Jr. to pay a past due bill, ... communicated to Jackie Weber, Jr. a threat to damage property of Jackie Weber, Jr." Unthank was sentenced to 33 months imprisonment for this offense and was released after serving slightly more than five months.

Unthank's most recent criminal activity— the extensive marijuana dealing that gave rise to the instant conviction—was uncovered

in mid-August of 1995, when sheriff's deputies in Jefferson County, Missouri pulled over a large tractor-trailer truck for a routine traffic violation. The driver of the truck—not the defendant but an individual named Kevin Miller—was extremely nervous and unable to answer simple questions. His behavior aroused the suspicions of one of the deputies, who asked for and received permission to search the vehicle. The consensual search of the truck yielded approximately 600 pounds of marijuana. Miller agreed to cooperate with law enforcement officials and informed them that he was working with an individual named "Carol" and had been directed to deliver the drugs to another person known as "Kevin" in Illinois. Agents of the DEA were contacted, and a "controlled delivery" of the marijuana was arranged. Miller drove the truck to the trailer home of the appellant, Kevin Unthank, in Brighton, Illinois, where DEA agents effected an arrest after observing Kevin Unthank and Carol VanDalsen unload the marijuana.

Following his arrest, and after being advised of his *Miranda* rights, Unthank provided the DEA with a two-page written statement in which he admitted his involvement in prior marijuana dealing. On August 14, 1995, the day following his arrest, the DEA conducted a consensual search of Unthank's trailer-home and seized $12,400 in cash. Federal prosecutors filed a criminal complaint on August 15, charging Unthank and VanDalsen with conspiring to possess with intent to distribute marijuana. 21 U.S.C. § 841(a)(1) and § 846. Unthank was detained pending trial. On August 22, a federal grand jury returned an indictment which, like the complaint, charged Unthank and his co-defendant with conspiracy to possess with intent to distribute "divers amounts of marihuana."

Following Unthank's arrest, DEA agents conducted further investigation and discovered, in piecemeal fashion, substantial cash proceeds from Unthank's drug-dealing activity. These discoveries occurred as follows:
(1) On September 5, 1995, after questioning Terry and Joanne Overbey, who were friends of the Unthank family (and relatives of the defendant's mother), investiga-

tors conducted a consensual search of the Overbey residence. They discovered a safe and some guns, and $26,800 in cash belonging to the defendant. The Overbeys informed investigating agents that they had received these items from Kevin Unthank's parents on two or three different occasions during the approximately two and a half weeks immediately following Unthank's arrest. Terry Overbey provided a written statement to the effect that Unthank's father had asked him to take the guns and the safe for safekeeping because he was afraid the police were going to find them. On September 6, pursuant to a search warrant, DEA agents opened the safe and found that it contained $15,000 cash as well as extensive drug ledgers that chronicled Unthank's drug-dealing activities.
(2) On September 6, the defendant's mother, Georgia Unthank, led investigators to yet another safe belonging to Unthank (which had been transferred to other friends of the Unthanks for safekeeping). This safe contained $147,020 in cash.
(3) In early October, the defendant's wife turned over $39,600 cash to investigators.

The total drug proceeds discovered by investigators (including the $12,400 initially seized at Unthank's trailer) amounted to $240,820.

As these drug proceeds were discovered, piecemeal, between the time of Unthank's arrest in August and mid-October, it became necessary to file a superseding indictment and later a second superseding indictment in order that the charging document against Unthank would accurately reflect the amount of drug money subject to forfeiture under Title 21 U.S.C. § 853. The second superseding indictment, like its predecessors, alleged in Count I that the defendant had conspired to possess with intent to distribute "divers amounts of marihuana." Count II of the superseding indictment claimed that the $240,820 in drug proceeds discovered during the investigation were subject to forfeiture under 21 U.S.C. § 853. On November 5, 1995, Unthank entered a plea of guilty to both counts of the second superseding indictment, following a hearing to determine that the guilty plea was knowing and voluntary.

The Probation Department prepared a PSR, which concluded that the defendant's relevant conduct encompassed 1,408 kilograms (or some 3,104 pounds) of marijuana, giving Unthank a base offense level of 32 under the Guidelines. The Probation Department recommended a two-level enhancement for the possession of a firearm during the drug-trafficking offense, a three-level reduction for acceptance of responsibility, and a two-level enhancement for obstruction of justice, inasmuch as Unthank had apparently arranged for some of the proceeds of his drug-dealing to be transferred from the home of his parents to Joanne and Terry Overbey during the DEA investigation.

Under the foregoing sentencing calculation, without the career offender adjustments applicable under Chapter 4 of the Guidelines, Unthank was assigned an offense level of 33 (after the recommended adjustments). The PSR also concluded that the defendant was a career offender within the meaning of U.S.S.G. § 4B1.1, for he had two prior felony convictions that brought him within the definition of "career offender."[1] Under the career offender provisions of 4B1.1, Unthank's base offense level was 37, or 34 when adjusted for acceptance of responsibility.

Unthank objected to the PSR, arguing, as he does in this appeal, that the career offender provisions were inapplicable. Unthank maintained that his prior felony conviction from Illinois (for the crime of intimidation) did not involve violence against *persons* and was thus not a conviction for a "crime of violence." Unthank also objected to the recommended enhancement for obstruction of justice, stating in conclusory fashion that there was "absolutely no evidence alleged to support [the enhancement]." The sentencing judge conducted a hearing on January 16, 1996, and heard argument on these matters as well as testimony from Unthank, Unthank's father, and one of the DEA agents involved in the investigation. Much of this testimony concerned the question of whether Unthank had obstructed justice by directing his parents to move the safes and guns discovered by DEA agents in the possession of the Overbeys.[2] The judge rejected Unthank's arguments and endorsed the recommendations of the Probation Department, finding that (1) Unthank could be sentenced as a career offender because his prior conviction for intimidation represented a prior conviction for a "crime of violence," and (2) Unthank obstructed justice by arranging to have the incriminating safes and weapons transferred from his parents to the home of his friends Joanne and Terry Overbey. As noted previously, the obstruction of justice finding did not affect Unthank's sentence because he ended up with a higher offense level under the career offender provisions, which prevail over the usual Guidelines calculations if they provide for a higher offense level. U.S.S.G. § 4B1.1. Applying a base offense level of 34 and criminal history category of VI, as mandated by § 4B1.1, the judge sentenced Unthank to 262 months imprisonment (at the low end of the applicable range of 262–327 months). This appeal followed.

## II. ISSUES

The appellant raises two issues relating to his sentence: (1) whether the district court erred when it sentenced him as a career offender under § 4B1.1, after determining as a matter of law that his conviction for the Illinois crime of intimidation was a prior conviction for a "crime of violence," and (2) whether the district court committed clear error when it found that he obstructed justice and imposed a two-level enhancement to his base offense level pursuant to U.S.S.G. § 3C1.1. We need not express an opinion on the obstruction-of-justice issue if we determine that Unthank was properly sentenced as a career offender on the basis that his

---

**1.** One conviction was for a controlled substance offense (the 1987 conviction for conspiracy to distribute cocaine) and the other for a "crime of violence" (the 1992 conviction for intimidation).

**2.** A detailed description of this testimony is omitted, for it is relevant only to the obstruction-of-justice issue. As explained below, we conclude that Unthank was properly sentenced as a career offender under § 4B1.1. Therefore, we do not address the question of whether Unthank warranted an enhancement under § 3C1.1 in this opinion. *See infra* note 4.

Illinois conviction for the felony offense of intimidation was a "crime of violence."

## III. DISCUSSION

A criminal defendant who meets the criteria set forth in § 4B1.1 of the Guidelines is deemed to be a "career offender" and must be given a lengthier sentence in light of his status as a recidivist with a record of serious criminal activity. The career offender provisions of the Guidelines reflect Congress' view that "substantial prison terms should be imposed on repeat violent offenders and repeat drug traffickers." S.Rep. No. 225, 98th Cong., 1st Sess. 175 (1983). "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) *the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.*" U.S.S.G. § 4B1.1 (emphasis added).

The parties agree that Unthank was more than eighteen years of age at the time of the instant offense (he was 32) and that the instant offense (conspiracy to possess with intent to distribute marijuana) is a "controlled substance offense." The sentencing judge determined that Unthank had two prior felony convictions which brought him within the parameters of the term "career offender": (1) the 1987 conviction for a controlled substance offense (conspiracy to distribute cocaine), and (2) the 1992 conviction for the Illinois crime of "intimidation," which the judge found to be a "crime of violence" as defined in the Guidelines. Unthank does not dispute that his 1987 conviction was for a "controlled substance offense" within the meaning of § 4B1.1. However, according to the appellant, the Illinois crime of intimidation (of which he was convicted in 1992) is *not* a "crime of violence" for purposes of the federal sentencing guidelines. Thus, he argues that this conviction was improperly counted by the sentencing judge when he determined that Unthank was a career offender under § 4B1.1.

Whether the Illinois crime of intimidation, as charged in the information against Unthank, is a "crime of violence" under the Guidelines is a question of law that we review *de novo. United States v. Sebero,* 45 F.3d 1075, 1077 (7th Cir.1995); *see also United States v. Bauer,* 990 F.2d 373, 374 (8th Cir. 1993). We are persuaded that the Illinois intimidation offense to which Unthank pleaded guilty (like the crime of extortion, discussed below) is a "crime of violence" as a matter of federal sentencing law. Therefore, we affirm the decision to sentence Unthank as a career offender.

Our analysis begins with the definition of "crime of violence" set forth in the Sentencing Guidelines:

(1) *The term "crime of violence"* [as used in § 4B1.1] *means any offense under federal or state law punishable by imprisonment for a term exceeding one year that—*

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(ii) *is* burglary of a dwelling, arson, or *extortion,* involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(1) (emphasis added). As the Government observed at oral argument, there are three *distinct* ways that an offense may be considered a "crime of violence" under this definition: (1) "the use, attempted use, or threatened use of physical force against the person of another" is one of the elements of the offense, (2) the crime is specifically enumerated as a "crime of violence" in the definition (e.g., arson or extortion), or (3) the offense "otherwise involves conduct that presents a serious potential risk of physical injury to another." *See* U.S.S.G. § 4B1.2(1), comment. (n.2). We agree with the Government that the Illinois crime of intimidation (as charged in the information against Unthank) is a "crime of violence" because it is essentially the same crime as extortion,[3] an offense that is specifically enu-

---

**3.** To extort "is to gain by wrongful methods; to obtain in an unlawful manner, as to compel

payments by means of threats of injury to person,

merated in § 4B1.2(1)(ii). Seventh Circuit case law is abundantly clear that *"[e]numerated crimes ... are conclusively 'crimes of violence,' regardless of the circumstances."* United States v. Coleman, 38 F.3d 856, 859 (7th Cir.1994).

Illinois does not use the term "extortion" in its criminal code. Instead, conduct that would be described as "extortion" under the laws of most other jurisdictions is prohibited in Illinois under the heading of "intimidation":

> A person commits intimidation when, with intent to cause another to perform or to omit the performance of any act, he communicates to another, whether in person, by telephone or by mail, a threat to perform without lawful authority any of the following acts:
>
> (1) Inflict physical harm on the person threatened or any other person *or on property* ....

720 ILCS 5/12–6(a)(1) (emphasis added); *see* United States v. McNeal, 77 F.3d 938, 942–43 (7th Cir.1996) (acknowledging that prohibitions against extortion in the state of Illinois are found in the intimidation statute). Intimidation in the state of Illinois is a Class 3 felony punishable by as much as five years imprisonment and up to $10,000 in criminal fines. 720 ILCS 5 /2–6(a)(1); 720 ILCS 5/5–8–1.

In November of 1991, prosecutors in Madison County, Illinois filed an information charging Unthank with several felony offenses, including the crime of intimidation, alleging that "the ... defendant, *with the intent to cause* Jackie Weber, Jr. *to pay a past due bill* ... communicated to Jackie Weber, Jr. *a threat to damage property* of Jackie Weber, Jr.," in violation of 720 ILCS § 12–6(a)(1). In 1992, Unthank entered a plea of guilty to the amended information, which contained only the intimidation charge quoted above, and received a sentence of three years imprisonment.

The conduct set forth in the Illinois information against Unthank (threatening to harm the property of another person with the intent to cause that person to pay an overdue bill) is synonymous with "extortion" as that crime is defined in the vast majority of jurisdictions. It is, therefore, a "crime of violence" because extortion is specifically enumerated as a violent crime in § 4B1.2. Under federal law, for example, "the term 'extortion' means the obtaining of property from another, with his consent, *induced by wrongful use of actual or threatened force, violence, or fear,* or under color of official right." 18 U.S.C. § 1951. One need not engage in threats of physical harm to another person in order to be convicted of either the Illinois crime of intimidation or the federal crime of extortion. "[F]ear of economic harm [e.g., damage to one's property] is an acceptable form of fear" that will support a conviction for extortion under 18 U.S.C. § 1951. *United States v. Sturman,* 49 F.3d 1275, 1281 (7th Cir.1995).

It is worth noting the strong similarities between Illinois' intimidation statute, 720 ILCS 5/12–6(a)(1), and the crime of extortion as defined in other states. "A person commits intimidation when, with intent to cause another to perform or to omit the performance of any act, he communicates ... a threat to ... [i]nflict physical harm on the person threatened or any other person *or on property* ...." 720 ILCS 5/12–6(a)(1). Similarly, according to a leading treatise, "[p]ractically all of the [extortion] statutes cover threats ... to cause bodily harm to the person or to injure the *property* of ... the victim or some other person." Walter R. LaFave & Austin W. Scott, Jr., *Criminal Law* § 8.12 (2nd edition 1986) (emphasis added); *see also Model Penal Code* § 223.4 ("theft by extortion" covers threats to "inflict bodily injury on anyone or commit any other criminal offense."); Ala.Code §§ 13A–8–13, 13A–8–1(13); Ariz.Rev.Stat. § 13–1804(A)(3); Me.Rev.Stat.Ann. tit. 17–A, § 355.

By pleading guilty to the intimidation charge set forth in the Illinois information in 1992, Unthank admitted that he threatened to damage the property of another with the intent to cause that person to pay an overdue bill. The appellant argues that he pleaded guilty to intimidation, not extortion; therefore, he was not convicted of a "crime

property, or reputation." *Black's Law Dictionary* (6th ed.1990) 585.

of violence" and is "off the hook" as far as the career offender provisions of the Guidelines are concerned. Under the appellant's literal and selfserving approach, the mere happenstance that Illinois uses different or atypical nomenclature to describe certain conduct (which is almost universally recognized as extortion) serves to transform his prior Illinois conviction into a conviction for a non-violent offense. A brief hypothetical illustrates the folly of this reasoning. Let us assume that we have a defendant like Unthank, except that his prior state conviction arose in Alabama, Arizona, or Maine (or one of the many other jurisdictions with a traditional extortion statute) rather than in Illinois. Such an individual, having engaged in conduct *identical* to Unthank's, would have on his record a state-court conviction for "extortion" (which the Guidelines explicitly define as a "crime of violence"), and there is no question that this hypothetical defendant would be sentenced as a career offender. Ala.Code §§ 13A–8–13, 13A–8–1(13); Ariz. Rev.Stat. § 13–1804(A)(3); Me.Rev.Stat. Ann. tit. 17–A, § 355. Under the appellant's reasoning, our hypothetical defendant would receive a more severe federal sentence merely by virtue of having committed his prior extortion crime in a state other than Illinois. It should be obvious that the appellant's argument, if accepted, would result in disparate sentencing results on the basis of mere differences in state-law terminology. However, one of the primary reasons for creating a Sentencing Commission with authority to promulgate federal guidelines was to avoid "unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct...." 28 U.S.C. § 991(b)(1)(B). Whenever possible, this court has insisted on uniformity in the way Guidelines terms are defined, and we have rejected attempts to sidestep the career offender provisions of the Guidelines based on minor, non-substantive differences in the way that a particular crime is designated or labeled by a state. *Coleman,* 38 F.3d at 859 (holding that state court conviction for "residential burglary" was equivalent to "burglary of a dwelling," an enumerated crime of violence under § 4B1.2); *see also United States v. Phipps,*

68 F.3d 159, 161 (7th Cir.1995) (meaning of "imprisonment," for purposes of the Guidelines, is "a question of federal law, one depending on what states *do* rather than on the labels they attach to their sanctions."). We continue this treatment of career criminals today and reject Unthank's argument that intimidation should be considered an offense other than extortion and thus not a crime of violence.

In a last-ditch attempt to persuade this court that intimidation may not be considered a "crime of violence" for purposes of federal sentencing, the appellant asserts that the Guidelines definition of "crime of violence" is ambiguous and therefore must be construed in his favor under the "rule of lenity." As an initial matter, we note that the rule of lenity is a rule of limited application:

> Although ambiguity concerning the meaning of statutory language should be resolved in favor of lenity, the rule of lenity is inapplicable unless there is a *grievous* ambiguity or uncertainty in the language and structure of the Act.... We do not believe that ... ambiguity may be found (and the rule of lenity invoked) whenever a creative appellant is able to posit possible alternative meanings for statutory language, *no matter how tenuous or improbable.*

*United States v. Ranum,* 96 F.3d 1020, 1030 (7th Cir.1996).

The rule of lenity does not apply in Unthank's case because § 4B1.2 (with respect to extortion) is not even mildly ambiguous, much less *"grievous[ly]* ambigu[ous] or uncertain[ ] in [its] language and structure." *Id.* Under § 4B1.2(1)(ii), a crime is a "crime of violence" if it is punishable by a term exceeding one year and if it *"is* burglary of a dwelling, arson, or extortion, involves use of explosives, *or* otherwise involves conduct that presents a serious potential risk of physical injury to another." The appellant mistakenly interprets this language to mean that *"only* [crimes] that cause or threaten to cause or present a serious risk of physical injury to another person qualify as 'crimes of violence.'" If the Sentencing Commission had wished to make the enumerated offenses

**1212**

crimes of violence only if they also posed a "serious potential risk of physical injury to another," the drafters of § 4B1.2 would not have used a comma and the disjunctive "or" to set off the language about "physical injury to another" from the immediately preceding list of enumerated crimes in § 4B1.2(1)(ii). Under a straightforward, common-sense reading of the Guidelines language, a crime that is specifically enumerated (such as extortion or arson) is a "crime of violence" *regardless of whether it involves a serious potential risk of harm to another person. Coleman,* 38 F.3d at 859. The Sentencing Commission has determined that extortion should be considered a violent crime, and this court refuses to undermine that determination by invoking the rule of lenity when it does not apply. In other words, we agree with the Government that "the rule of lenity is not a magic wand" and refuse to manufacture ambiguity where none exists. *See Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980) ("Where Congress has manifested its intention, [courts] may not manufacture ambiguity in order to defeat that intent.").

### IV. CONCLUSION

We hold that Unthank's 1992 conviction for the Illinois crime of intimidation is a prior conviction for a "crime of violence" as that term is defined in § 4B1.2 of the Guidelines. He thus had two prior felony convictions that were properly considered in order to enhance his sentence under § 4B1.1: the first being a controlled substance offense (the 1987 cocaine conspiracy conviction) and the second a "crime of violence" (the 1992 intimidation conviction). In light of our holding

that the district judge's sentencing of Unthank as a career offender was proper, we need not address the appellant's alternative claim that the district court erred by applying an enhancement for obstruction of justice under § 3C1.1.[4] The sentence of Kevin Unthank is

AFFIRMED

---

4. The parties agree that if Unthank was properly sentenced as a career offender, he was not prejudiced by the trial judge's obstruction-of-justice finding and we need not reach the issue. We observe, however, that "whether [Unthank] obstructed justice for purposes of § 3C1.1 is a factual determination that enjoys a *presumption* of correctness under the clearly erroneous standard." *United States v. Hickok,* 77 F.3d 992, 1007 (7th Cir.1996) (emphasis added). At the sentencing hearing, the Government argued (and the judge agreed) that it was reasonable to *infer* that Unthank had something to do with the secreting of the safe and the guns, especially in light of the fact that Unthank, although he cooperated to a limited extent with the investigation, was less than forthcoming concerning the whereabouts of his drug proceeds. The sentencing judge agreed with the Government, concluding that "based on the inferences from all the evidence I've heard ... the defendant did obstruct justice." In our opinion, considering the "highly deferential" clear error standard of review which applies to such determinations, *id.*, the sentencing judge did not commit reversible error in finding that Unthank obstructed justice, for the record reflects that the court based its finding on credibility determinations and on reasonable inferences from the record considered in its entirety.