DeMOSS, Circuit Judge,
dissenting:
In this case we consider whether application of the career offender provision found in Chapter Four of the Sentencing Guidelines is an “adjustment” as such term is contemplated by the Guidelines and, by *249 implication, the plea agreement entered into between the government and Roberts. See U.S. Sentencing Guidelines Manual § 4B1.1. I would answer “yes” for two reasons. First, I find that the structure, sequencing, and express language of the Guidelines clearly indicate that application of the career offender provision is a guideline adjustment. And second, there being no controlling case law on point, I find that the decision in United States v. Traugott is both directly on point and the most persuasive analysis available. 364 Fed.Appx. 925 (5th Cir.2010) (Garza, DeMoss, and Clement, JJ.) (per curiam) (unpublished). I would find that the government’s argument in favor of applying the career offender provision is wholly consistent with a reasonable understanding of the plea agreement, and that the government did not breach any term of the plea agreement. I would hold that Roberts’s appeal waiver is valid and affirm the district court’s sentence. I respectfully dissent.
THE PLEA AGREEMENT
The plea agreement entered into between the government and Roberts stipulates to the following: (1) Roberts’s base offense level under § 2Dl.l(c)(5) is 30; (2) a two-level reduction for acceptance of responsibility applies under § 3E1.1; and (3) other specific offense characteristics or guideline adjustments may increase or decrease the appropriate sentencing range and either party may argue for such increases or decreases. These stipulations are neither vague nor complicated. The first stipulation provides a starting point for sentencing by avoiding argument on the quantity of cocaine base at issue (68.59 grams). Base offense level 30 simply refers to a quantity of cocaine base of at least 50 grams but less than 150 grams, nothing more. See § 2Dl.l(e)(5). The second stipulation provides that, unless the probation officer determines that Roberts has not actually accepted responsibility for his offense, Roberts’s total offense level— which is not stipulated to — will be reduced by two levels. See § 3E1.1. The third stipulation provides that both the government and Roberts may consider the facts in the forthcoming presentence report (e.g., employment record, educational background, substance abuse, family characteristics, extent and seriousness of criminal history) and argue at sentencing for increases or decreases to Roberts’s offense level based on any applicable specific offense characteristic or guideline adjustment.
The plea agreement makes no reference to Chapter Four of the Guidelines, including the career offender provision found in § 4Bl.l(b). Neither does it reference Roberts’s extensive criminal history which qualifies him as a career offender.[1] This is unsurprising. In most cases, a presentence report sets forth a defendant’s official criminal history and establishes the factual basis for the government to argue for applying the career offender provision. The presentence report is completed by a probation officer well after a plea agreement is entered into but prior to sentencing.[2] Thus, at the time a plea agreement *250 is entered into, the government often does not have all of the facts relevant to sentencing. Only the defendant (and possibly defense counsel) would know the full extent and seriousness of the defendant’s criminal history. What would be surprising is the government stipulating in a plea agreement to ignore a defendant’s criminal history, and a defendant expecting it to ignore such history, when such relevant facts will likely remain uncertain to the government until closer to sentencing.
The plea agreement expressly reserves the government’s right to argue in favor of “guideline adjustments.” We should therefore look to the Guidelines to determine whether applying the career offender provision constitutes an “adjustment.” We should then look to the relevant case law to the extent it can aid us in reaching the correct determination. I believe that both the Guidelines and the case law support finding the application of the career offender provision to be an adjustment.
THE GUIDELINES
We should first look to the Guidelines themselves. The Guidelines are purposefully structured to provide for application of its provisions in a precise sequence. See § 1B1.1; United States v. Martinez-Noriega, 418 F.3d 809, 812 (8th Cir.2005); United States v. Ventura, 353 F.3d 84, 92 (1st Cir.2003). For drug offenders such as Roberts, Chapter Two establishes what is clearly labeled a “Base Offense Level” solely on the basis of the quantity of drugs. See § 2Dl.l(e). The plea agreement stipulates to a base offense level of 30 under Chapter Two.
Only after the base offense level is established under Chapter Two do other provisions of the Guidelines apply. Chapter Three is titled “Adjustments,” but the Guidelines in no way indicates that Chapter Three is its exclusive source of adjustments. Chapter Four determines a defendant’s “Criminal History and Criminal Livelihood” and it includes a provision that may raise the already established base offense level for “career offenders.” See § 4Bl.l(b). The table in Chapter Four simply sets forth what “Offense Level” is to be used “if [the listed offense level is] greater than the offense level otherwise applicable.” Id. It does not purport to establish a “new” or “replacement” base offense level, as the majority labels it. By its own terms, the career offender provision can only be used to increase (another way of saying “enhance” or “adjust upward”) a separate and previously established offense level.
Moreover, in its Application Instructions, the Sentencing Commission gives specific instructions to “[determine the defendant’s criminal history category as specified in Part A of Chapter Four [and then] [determine from Part B of Chapter Four any other applicable adjustments.” § lBl.l(f) (emphasis added). Thus, the Commission itself considers application of the career offender provision found in Part B of Chapter Four to be an “adjustment” as it understands such term. I agree with the Commission’s interpretation of the Guidelines.
THE CASE LAW
After we consider the structure, sequencing, and express language of the Guidelines, we should look to controlling or persuasive case law. Like the majority, I have not found any published opinion from *251 our circuit or any other circuit analyzing the specific issue we face today.
However, we considered this exact question earlier this year in Traugott, a case with nearly identical facts and a nearly identical plea agreement. See 364 Fed. Appx. at 925. I would not dismiss our conclusion in that case as casually as does the majority. While Traugott is unpublished and therefore not controlling, it is persuasive and aids us in the correct determination of this case. See Fed R.App. P. 32.1(a); 5th Cir. R. 47.5.4; United States v. Meraz-Enriquez, 442 F.3d 331, 333 (5th Cir.2006). In Traugott, we stated that “the stipulation [under § 2Dl.l(c)] merely confirms the appropriate guidelines section applicable to [the defendant’s] offense. It does not preclude application of the career offender enhancement.” Traugott, 364 Fed.Appx. at 925. That is, when asked whether the government’s right to argue in favor of “adjustments” at sentencing also included the right to argue in favor of applying the career offender provision, we answered “yes.” Id. The only difference between this case and Traugott is that the Traugott defendant orally acknowledged that his criminal history could increase the applicable guidelines range, but such an acknowledgment simply restates what is already written in the stipulation. Id. I would follow Traugott.
The majority points to two published cases where we refer to the career offender offense level as a “base offense level,” but both references involved no analysis of this specific issue (unlike Traugott) and were dicta. See United States v. Anderson, 591 F.3d 789, 790 (5th Cir. 2009); United States v. Rodriguez-Jaimes, 481 F.3d 283, 284 (5th Cir.2007); but see United States v. Hopkins, 318 Fed.Appx. 297, 298 (5th Cir.2009) (unpublished) (stating in dicta that application of the career offender provision is an “adjustment”). The majority also points to two other published eases, but each of them involved stipulated “total” offense levels. See United States v. Fowler, 445 F.3d 1035, 1037 (8th Cir.2006); United States v. Rivera, 357 F.3d 290, 295 (3d Cir.2004). Those cases are easily distinguishable: the government in each of those cases argued for additional offense levels after it had stipulated to a “total” offense level; the government in this case only stipulated to the “base” offense level and expressly reserved the right to argue for adjustments to the base offense level.
I have found published eases in eight circuits that refer to the application of the career offender provision as an “adjustment.” See, e.g., United States v. Hopkins, 577 F.3d 507, 508 (3d Cir.2009); Martinez-Noriega, 418 F.3d at 812; United States v. Jeppeson, 333 F.3d 1180, 1183 (10th Cir.2003); Ventura, 353 F.3d at 92; In re Sealed Case No. 98-3116, 199 F.3d 488, 489 (D.C.Cir.1999); United States v. Unthank, 109 F.3d 1205, 1208 (7th Cir. 1997); United States v. Daly, 974 F.2d 1215, 1218 (9th Cir.1992); United States v. Downs, 955 F.2d 397, 399 (6th Cir.1992). Wfiiile I acknowledge that none of these cases specifically analyzed the issue we faced in Traugott and we decide today, I cite them to show that there is at least as much support in the non-controlling case law for my interpretation of “adjustment” as there is for the majority’s interpretation. I believe that the most persuasive case law on point supports finding the application of the career offender provision to be an adjustment.
CONCLUSION
I disagree with the majority’s constricted reading of the term “adjustment.” It is not based in the structure, sequencing, or *252 express language of the Guidelines, nor is it founded upon controlling or particularly persuasive case law. Moreover, its denomination of any career offender offense level as a “new” or “replacement” base offense level is wholly without support.[3] I would hold that application of the career offender provision of Chapter Four — at least after a defendant’s base offense level has already been established pursuant to § 2Dl.l(c) in a drug case — is an adjustment. As such, because the government did not breach the plea agreement by arguing in favor of applying the career offender provision, I would find Roberts’s appeal waiver valid and affirm the district court’s sentence.[4]

. Roberts qualifies as a career offender because (1) he was at least 18 years old when he committed the instant offense, (2) the instant offense is a controlled substance felony, and (3) Roberts has at least two prior controlled substance felonies. See § 4B1.1(a). The only question is whether the government may argue in favor of applying the career offender provision. For the reasons discussed above, I would answer yes.

. For example, in this case the plea agreement was entered into by the government and Roberts on July 21, 2008, but the presentence report was not disclosed to either party until *250 October 31, 2008, more than three months later.

. Whether a base offense level is adjusted by a set number of levels (e.g., "increase by [X] levels”) or adjusted to a pre-set level (e.g., "increase to level [X]”) does not change the fact that the increase is an adjustment. For example, § 2D 1.1(b) — the "specific offense characteristic” provision for drug crimes— provides in certain circumstances for a two- or three-level increase or, "if the resulting offense level is less than level [X]. increase to level [X].” See § 2D1.1(b)(2), (10). Structurally, such an increase to a specific pre-determined level under § 2D 1.1 is the same as § 4Bl.l’s "if greater than” increase to a specific pre-determined level. It too would be an impermissible "new” or "replacement” base offense level under the majority’s reasoning, even though the plea agreement expressly permits the government to argue for specific offense characteristic increases at sentencing.

. The district court ultimately sentenced Roberts to 168 months imprisonment. This sentence is well below the range recommended by both the government and the presentence report (262-327 months) and is within the range that would be applied if the district court looked at the plea agreement's stipulated offense level and nothing else (140-175 months). The original sentencing judge was not bound by the plea agreement, however, and neither will the next sentencing judge. The next sentencing judge may decide to ap- ■ ply the career offender provision, following the presentence report’s recommendation, even without the government’s argument in favor of it. It is very possible that Roberts will receive a much harsher sentence from a different sentencing judge on remand than the 168-month sentence he has today.